040616Lf

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

THOMAS GROSS, )
)
Plaintiff, )  No. 15 cv 1030 EJM
vs. )
) ORDER
CAROLYN W. COLVIN, )
ACTING COMMISSIONER OF )
SOCIAL SECURITY, )
)
Defendant. )

Plaintiff brings this action seeking judicial review of the Commissioner's denial of his application for social security disability income benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §416. Briefing concluded March 31, 2016. The court has jurisdiction pursuant to 42 USC §405(g). Affirmed.

Plaintiff asserts the Administrative Law Judge (ALJ) failed to properly identify and categorize his previous past relevant work experience, failed to properly assess his Residual Functional Capacity (RFC) and failed to properly develop the record. Accordingly, he asserts that the Commissioner's decision is not supported by substantial evidence on the record as a whole.

> [R]eview of the agency decision is limited to whether there is substantial evidence on the record as a whole to support the [Commissioner's] decision. This requires [the court] to do more than merely parse the record for substantial evidence supporting the [Commissioner's] decision. [The court] also must consider evidence in the record that detracts from the weight of the decision. Substantial evidence is less than a preponderance, but enough so

that a reasonable mind might find it adequate to support the conclusion.

Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992.)

Gross was 55 years of age at the time of the Commissioner's final decision. He graduated from high school and had past relevant work experience as a computer numerically controlled programmer and machinist (CNC Programmer.) He applied for disability benefits on November 21, 2012, alleging disability since May 7, 2012, due to cardiac limitations, spinal stenosis, and sleep apnea. (Tr. 159, 212.) After a hearing on March 26, 2014, the ALJ ruled against Gross on May 22, 2014, (Tr. 11-19, 24), finding that Gross could perform his previous relevant work as a CNC Programmer. Gross filed a request for review before the Appeals Council, which was denied on July 30, 2015. (Tr. 25.)

1. Substantial Evidence Supported the ALJ's Finding that Gross Could Resume His Physically Undemanding Past Relevant Work

The ALJ determined Gross had RFC to meet sedentary work demands with the additional limits that he could occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; avoid concentrated exposure to extremes of heat, cold, and pulmonary irritants; and avoid all exposure to hazardous conditions such as s unprotected heights and dangerous machinery, defined as large, moving machinery. (Tr. 14, 53). The ALJ posed these limitations in a hypothetical question and the vocational expert (VE) responded that the hypothetical person could perform Gross's past relevant

2

work as a CNC Programmer. The evidence substantially supports the ALJ's step 4 finding. Gross failed to carry his burden of proof and demonstrate that he could not do his past relevant work as it is generally performed. Reed v. Sullivan, 988 F.2d 812, 815 (8th Cir. 1993).

There is no factual or legal support for Gross's claim that the ALJ did not consider the prohibition against hazardous conditions such as unprotected heights and dangerous machinery. In fact, the ALJ specifically identified and included these limitations in his hypothetical question to the vocational expert. Gross's argument incorrectly conflates working around *any* machinery, either switched on or off, with *dangerous* machinery. Gross testified that as a CNC Programmer, he keyed information into a computer and then the CNC machine produced items. (Tr. 28-29). Gross testified, "Rather than, than turning hand cranks and wheels like the old-fashioned ways, or drill presses, the machine does it all, and the computer tells it what to do." (Tr. 29). Gross programmed a punch press that cut metal shapes. (Tr. 49). The VE identified the job of CNC Programmer as Gross's past relevant work. (Tr. 282). The VE testified that some CNC jobs had programming in the office and some had programming on the production floor. (Tr. 52). The VE opined that the job could be done in a controlled office setting. (Tr. 53).

The ALJ did not need to collect more evidence about Gross's past work as a CNC programmer. The ALJ followed the procedure set out in SSR 82-61 when

evaluating Gross's past relevant work. Gross testified about his past work and described it in his application documents. (Tr. 28-29, 42, 49, 241). The VE submitted a written opinion and testified at the hearing, responding to both the ALJ's and Gross's questions. (Tr. 282). The VE identified the CNC Programmer position by its Dictionary of Occupational Titles (Dictionary) number, thus providing this additional authority. (Tr. 282). Dictionary 007.167-018. The ALJ had sufficient evidence about Gross's past relevant work when determining he could return to that work.

The evidence clearly shows that Gross could do his past relevant work in a controlled office free from environmental and moving machinery hazards as it was generally performed. A claimant will be found not disabled if he is capable of performing his past relevant work either as he performed it or as employers in the national economy required it to be performed. (Tr. 52-53). Wagner v. Astrue, 499 F.3d 842, 852 (8th Cir. 2007); Blazek v. Astrue, No. C 08-3023-MWB, 2009 WL 1956455 *3 (N.D. Iowa July 6, 2009) (unpublished).

2. The ALJ Gave Supported Reasons for Not Crediting Opinions by Dr. Powers, Dr. Garrels and Ms. Anderson

There has been much confusion discussing July 2012 opinion by Dr. Jill Powers. Both sides claim this opinion supports their claim. In July 2012, Dr. Powers wrote a general letter stating she had seen Gross for physical therapy and

had referred him to a pain clinic for epidural injections. (Tr. 354). She noted that a computerized tomography (CT) scan showed lumbar spine stenosis. (Tr. 354). Dr. Powers wrote that Gross's pain was controlled and he could return to work. (Tr. 354). Dr. Powers wrote, "I do not feel his risk of injury is any different than they have been over the last several years as this is a pre-existing condition." (Tr. 354). Thus, Dr. Powers released Gross to return to work without restrictions. The ALJ found plaintiff to be not disabled. The July 2012 opinion supports the position that plaintiff was not disabled, indeed states he can return to work "without restrictions." AR 354. The ALJ did not go this far. He found that Gross could return to his previous work with restrictions. In either case, the July 2012 opinion certainly does not support plaintiff's claim that he was disabled. The ALJ also had ample other support in the record for his conclusions, including other opinions from Dr. Powers to which he did not give weight.[1] Def. Br. p. 11.

The ALJ considered Dr. Powers August 2013 report that Gross stopped taking all his medications because he felt he did not need them. (Tr. 16, 478). Gross denied chest pain for the last three months and stated he took his pain medication only occasionally. (Tr. 478). Dr. Powers restarted one medication, suggested Gross take chewable aspirin daily, and recommended that he lose

---

[1] Plaintiff also points out that the ALJ mistakenly attributed a medical report to Dr. Powers that was actually written by Dr. Garrels, M.D. and Ms. Anderson, PA-C. (Tr. 18, 392; Pl. Br. pp. 5-7) The report was a short certificate which related to a different job and was not a "medical" opinion. 20 C.F.R. Section 404.1527(b)(2). The ALJ gave it no weight. The court finds this to be harmless error.

5

weight. (Tr. 478-79). The ALJ also weighed Dr. Power's November 2013 notes, which showed Gross was feeling well, had lost weight, and had well-controlled diabetes. (Tr. 16, 475). Thus, the ALJ had ample evidence of Dr. Power's treatment relationship with Gross.

### 3. The ALJ Fulfilled his Investigative Duty and There is No Indication that Additional Records Existed

The burden of proof remained at all times on Gross to prove disability and to present the strongest possible case. Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991). Gross did not even secure additional records to present to the Appeals Council. (Tr. 287-89). The claimant, "made no showing that the medical reports referred to would add to the medical records already in evidence. Weber certainly could have obtained these records during the appellate process and demonstrated that they were such that a remand to the ALJ was necessary. She has not done so." Weber v. Barnhart, 348 F.3d 723, 725-26 (8th Cir. 2003). The ALJ fulfilled his investigative duty to Gross.

The ALJ was not required to order a consultative examination to determine the functional effects of Gross's ejection fraction, a cardiac condition. Gross suggested a consultative examination at the hearing, but then did not press the point. (Tr. 40). After Gross testified, the ALJ stated, that he did not think he needed a consultative examination. (Tr. 46). Gross's attorney responded, "Okay." (Tr. 46).

The ALJ found that Gross had the capacity for a reduced range of sedentary work involving very modest demands. (Tr. 14). Gross's testimony supported the ALJ's RFC finding. At the time of the hearing, Gross stated he did not experience shortness of breath when sitting or grocery shopping, though he still did when exercising on his treadmill. (Tr. 44-45). However, his doctors asked him to elevate his heart rate when exercising. (Tr. 45). He occasionally worked out on the treadmill from 10 to 20 minutes with and without incline and resistance. (Tr. 36-37). He carried nitroglycerine for chest pain, but had not needed to use it. (Tr. 31). He testified he had not experienced chest pain since he was originally treated for it. (Tr. 31). Gross did not think he had even gone to his last cardiologist appointment. (Tr. 45).

Gross endorsed a wide range of activities that were consistent with a reduced range of sedentary work. Gross testified that his hobbies included wood carving and fishing. (Tr. 31-32). His usual activities included doing laundry, washing dishes, cooking, grocery shopping, and going out to eat a couple of times a month. (Tr. 33-35). Gross could drive for an hour at a time and could sit for two or three hours at a time. (34-35, 38). These activities are entirely in keeping with the ability to do a reduced range of sedentary work. The Eighth Circuit Court of Appeals has held on many occasions that daily activities can support a finding of not disabled. *See e.g.*, Barnett v. Barnhart, 362 F.3d 1020, 1023 (8th Cir. 2004) (activities revealed claimant could perform past work); Qualls v. Apfel, 158 F.3d

425, 428 (8th Cir. 1998) (the claimant could engage in extensive daily activities so was not disabled).

In addition to Gross's activities and lack of symptoms, the medical evidence related to Gross's heart condition supported the ALJ's RFC finding. The ALJ was aware of Gross's ejection fraction, (Tr. 16), but he cannot assign limitations based on bare test results. See Perkerson v. Astrue, No.11-1709 IPJS/JJK, 2012 WL 3230365 *12 (D. Minn. June 1, 2012) (unpublished) (physicians interpreted cardiac test results). Other evidence showed Gross functioned well. As the ALJ noted, two times in October 2012, Gross's cardiovascular specialist, Vijay Rajendran, M.D., stated Gross had no chest discomfort and that Gross denied orthopnea, edema, palpitations, tachycardia, syncope, or presyncope. (Tr. 16, 434, 436). Dr. Rajendran stated that Gross's cardiac signs were normal and his condition was stable and asymptomatic. (Tr. 435, 437). Other documents showed Gross was not on extensive medication management for any cardiovascular impairment and did not list medications for his cardiac condition. (Tr. 16, 281).

The record also contained two reviewing physicians' opinions to which the ALJ gave significant weight. (Tr. 17). See Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("Certainly, there are circumstances in which relying on a non-treating physician's opinion is proper."). In December 2012, Lawrence Staples, M.D., a State agency consulting physician, opined Gross could frequently lift ten pounds, stand or walk for two hours a day, and sit for six hours a day. (Tr. 74-75).

Gross had some postural and environmental limitations, which the ALJ incorporated into the RFC finding. (Tr. 75-76). In forming his opinion, Dr. Staples considered Gross's cardiac history, spinal CT scans, back surgery, history of pain complaints and treatment, daily activities, and Dr. Alexander's report. (Tr. 75). Dr. Staples stated that Gross was primarily restricted by his orthopedic impairment (Tr. 76), and he did not mention Gross's ejection fraction as a limiting factor.

In February 2013, Laura Griffith, D.O., citing the same evidence plus some new records, agreed with Dr. Staples' assessment. (Tr. 85-87). She opined that Gross's coronary artery disease ("CAD") appeared stable and that his latest cardiac examination with Dr. Rajendran was a normal. (Tr. 85). Dr. Griffith opined that Gross's cardioverter defibrillator implant compensated for chronic systolic heart failure. (Tr. 87).

The ALJ gave significant weight to Dr. Staples' and Dr. Griffith's opinions because they were supported by objective evidence such as Gross's spinal and coronary studies, Gross's nominal medical treatment, near normal clinical signs, daily activities, and Dr. Staples' and Dr. Griffith's expertise in both medical and disability issues. (Tr. 17-18). *See* SSR 96-6p, 1996 WL 374180 at *1 (noting the reviewing doctor's familiarity with the disability programs); 20 C.F.R. § 404.1513(a)(1).

Gross's testimony, the records from Gross's treating cardiologist, and the reviewing physicians' opinions are sufficient evidence to provide a sufficient basis for the ALJ's decision. Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004).

### 4. Substantial Evidence Supported the ALJ's Residual Functional Capacity Finding

The ALJ's RFC finding included all Gross' proven limitations. Gross failed to support his claim that he required frequent unscheduled breaks and needed to miss more than one day a month from work. The ALJ made a supported finding that Gross was not entirely credible on this point. (Tr. 15-16).

The fact that Gross could have doctors' appointments does not make him unemployable. The courts have declined to assume a claimant had to miss an entire work day for an appointment. Barnett, 231 F.3d at 691. The ALJ found Gross lacking in credibility due to his activities, normal physical findings, a medically documented decrease in pain levels after October 2012, conservative treatment, and infrequent use of pain medication (Tr. 15-16). The Eighth Circuit Court of Appeals has recognized the ALJ's reasoning for finding Gross not credible.

- Daily activities were inconsistent with the allegedly disabling level of pain. Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001).

- Inconsistencies between the claimant's subjective complaints and the medical record detracted from credibility. See Johnston v. Apfel, 210 F.3d 870, 874 (8th Cir. 2000).

- Medical records showing a full range of motion, normal back curvature, and a normal gait supported the ALJ's finding that the claimant was not credible. Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003).

- Infrequency of treatment argues against disabling pain. <u>Hogan v. Apfel,</u> 239 F.3d 958, 962 (8th Cir. 2001).

The ALJ considered all the medical, testimonial, and regulatory factors before making a supported finding that Gross had the ability to return to his past relevant work. Based on the record, it is the court's view that the Commissioner's decision is supported by substantial evidence.

It is therefore

ORDERED

Affirmed.

April 6, 2016

                                          Edward J. McManus, Judge
                                          UNITED STATES DISTRICT COURT